# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

TINA ROBERTSON, et al., individually, and
on behalf of a class of others similarly
situated,

                 Plaintiffs,

v.

LTS MANAGEMENT SERVICES, LLC, et
al.,

                 Defendants.

Case No. 07-CV-00865-FJG

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF STATE LAW CLAIMS AND NOTIFICATION OF ALL PUTATIVE CLASS MEMBERS

### INTRODUCTION

On November 15, 2007, plaintiff Tina Robertson filed this action against defendants LTS
Management Services, Del Kimball, and Mark Curry for damages and collective action
certification under the Fair Labor Standards Act ("FLSA"). (Doc. 1). On June 17, 2008, the
First Amended Complaint was filed adding plaintiffs Kathy McCready, Ronal Reynolds, and
Fran Porter and state law claims under Missouri's Wage and Hour law and for common law
breach of contract, unjust enrichment, and quantum meruit. (Doc. 56). This Court conditionally
certified Plaintiffs' FLSA claim on October 9, 2008, holding that Plaintiffs had shown that "they
were 'similarly situated' and were victims of a single decision, policy or plan of defendants."
(Doc. 107). Plaintiffs now seek Rule 23 class certification for their state law claims arising
under Missouri statutory and common law and for approval of mailing and electronic publishing
of notification to be sent to all putative class members in the form attached as Exhibit A.

Plaintiffs' claims arise out of the common policy, plan and business practices of LTS Management Services. Plaintiffs allege that LTS violated and is violating the FLSA by creating an environment that required collection specialists to work unpaid off the clock ("OTC") prior to their scheduled shift, through breaks and meal periods, subsequent to the end of their scheduled shift. Plaintiffs also allege that LTS created, through expectation, practice, and/or environment, a workplace that encouraged all hourly employees to arrive at work prior to their paid shift, work through breaks and meal periods, and stay well-after their paid shifts ended, without paying them for that time, which included overtime ("OT") pay. In addition, Plaintiffs allege that LTS deliberately and willfully altered time records to avoid paying overtime to collection specialists.

2

# TABLE OF CONTENTS

INTRODUCTION...........................................................................................1

INDEX OF AUTHORITIES........................................................................5

    I.      FACTUAL BACKGROUND..............................................................8

           A. Parties..........................................................................................8

           B. The Plaintiffs' Allegations..........................................................9

           C. LTS's Corporate Policy & Practice.............................................9

           D. LTS Has a Common Practice of Unrecorded Work without Pay.........10

    II.     STANDARD FOR CLASS CERTIFICATION................................10

    III.    ARGUMENT...................................................................................11

           A. Class Definition.........................................................................12

           B. The Proposed Class Satisfies the Requirements of Rule 23(a)..........13

               1. Numerosity..........................................................................13

               2. Commonality.......................................................................14

                    a. Are Defendants Required Under Missouri Law to Pay Their Employees for Overtime and Off-The-Clock Work?....................14.

                    b. Did Defendants Fail to Pay Plaintiffs and Class Members for Overtime and Off-The-Clock Work?............................................15

               3. Typicality............................................................................16

               4. Adequacy of Representation................................................17

            C. Plaintiffs Satisfy the Requirements of Rule 23(b)(3)..........................18

               1. Predominance.......................................................................19

                    a. Proving Aggregate Class-Wide Damages is Appropriate.......20

                    b. Similar Wage and Hour Cases Have Met the Predominance Requirement......................................................21

3

2. Superiority……………………………………………………………22

CONCLUSION……………………………………………………………..27

Case 4:07-cv-00865-FJG   Document 168   Filed 12/11/09   Page 4 of 28

# INDEX OF AUTHORITIES

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996)..........................................16

*Amchem Products v. Windsor,* 521 U.S. 591, 617 (1997)...........................................22

*Arch v. American Tobacco Co.*, 175 F.R.D. 469 (E.D. Pa. 1997)....................................11

*Belles v. Schweiker*, 720 F.2d 509 (8th Cir. 1983)...............................................11, 13

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)..............................................11

*Blair v. Equifax Check Services, Inc., 181* F.3d 832 (7th Cir. 1999)..............................24

*Brown v. Cameron-Brown Co.,* 92 F.R.D. 32 (D.C. Va. 1981).....................................18

*Brown v. Pro Football, Inc.,* 146 F.R.D. 1 (D.D.C. 1992)............................................26

*Carpe v. Aquila*, Inc., 224 F.R.D. 454 (W.D. Mo. 2004)................................................17

*Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978).................................................24

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008)...................................21

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001)......................................14

*DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171 (8th Cir. 1995)................................15,16, 17

*Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326 (1980).............................................23

*Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202 (S.D.N.Y. June 18, 2007)........................23

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)..................................................11

*Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968)........................................11

*Elliott v. IT Corp.,* 150 F.R.D. 569 (N.D. Ill. 1992)..................................................12

*Esler v. Northrop Corp.,* 86 F.R.D. 20 (W.D. Mo. 1979)....................................14, 19, 20

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968)..................................................11, 25

*Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261 (Mo. Ct. App. W.D. 1984)....................15

*Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215 (Mo. Ct. App. W.D. 2007)..................14, 17

Case 4:07-cv-00865-FJG   Document 168   Filed 12/11/09   Page 5 of 28

*Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D. Mich. 1977)..................................23

*In re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. 609 (D. Kan. 1995).....13

*In re Antibiotic Antitrust Actions,* 333 F. Supp. 278 (S.D.N.Y. 1971)...........................26

*In re D.M.,* 771 A.2d 360 (D.C. 2001)..................................................................24

*In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493 (S.D.N.Y. 1996)..........19, 20

*In re Potash Antitrust Litig.,* 159 F.R.D. 682 (D. Minn. 1995)....................................20

*In re Simon II Litigation,* 211 F.R.D. 86 (E.D. N.Y. 2002)........................................19

*In re South Cen. States Bakery Products Antitrust Litig.,* 86 F.R.D. 407
(M.D. La. 1980)....................................................................................18

*In re Visa Check/Mastermoney Antitrust Litigation,* 280 F.3d 124 (2d Cir. 2001)...............27

*Joseph v. General Motors Corp.,* 109 F.R.D. 635 (D. Colo. 1986)................................12

*Krieger v. Gast,* 197 F.R.D. 310 (W.D. Mich. 2000)..............................................16

*Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091 (N.D. Ill. Dec. 1,
2000)...................................................... .......................................21, 24

*Lake v. First Nationwide Bank,* 156 F.R.D. 615 (E.D. Pa. 1994)..................................23

*Lang v. Kan. City Power & Light Co.,* 199 F.R.D. 640 (W.D. Mo. 2001).........................17

*Linquist v. Bowen,* 633 F. Supp. 846 (W.D. Mo. 1986)...........................................16

*Lozada v. Dale Baker Oldsmobile, Inc.,* 197 F.R.D. 321 (W.D. Mich. 2000)............18, 23, 25

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1977).....................................22

*McLaughlin v. Liberty Mutual Ins. Co.,* 224 F.R.D. 304 (D. Mass. 2004)....................…23

*Millett v. Atlantic Richfield Co.,* 760 A.2d 250 (Me. 2000)......................................24

*Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15 (Mo. Ct. App. W.D. 2008)...............…14

*Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620 (5th Cir. 1999)..........................13

*Musch v. Domtar Industries, Inc.,* 252 F.R.D. 456 (W.D. Wis. 2008)..........................24

6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154
(3d Cir. 2001)…………………………………………………………… ……...…24

*Nissan Motor Co. v. Fry,* 27 S.W.3d 573 (Tex. App. Corpus Cristi 2000)……………………23

*Owner-Operator Indep. Drivers Ass'n v. New Prime,* 213 F.R.D. 537 (W.D. Mo. 2002) …….17

*Paxton v. Union Nat. Bank,* 688 F.2d 552 (8th Cir. 1982)………………………………….....17

*Rackers & Baclesse, Inc. v. Kintsler,* 497 S.W.2d 549 (Mo. Ct. App. 1973)……………………15

*Rainbow Group Ltd. v. Johnson,* 990 S.W.2d 351 (Tex. App. 1999)…………………………12, 21

*Ramirez v. Labor Ready, Inc., et al.,* 2002 WL 1997037 (Cal. Sup., July 12, 2002)……………21

*Ramirez v. RDO-BOS Farms, LLC,* 2007 WL 273604 (D. Or. Jan. 23, 2007)…………………23

*Rex v. Owens, 585* F.2d 432 (10th Cir. 1978)……………………………………………13

*Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993)…………………………………………...13

*Scott v. Aetna Services, Inc.,* 210 F.R.D. 261 (D. Conn. 2002)…………………………………24

*Sheets v. Thomann,* 336 S.W.2d 701 (Mo. Ct. App. 1960)……………………………………11

*Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656 (2nd Cir. 1978)……………………...11

*Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665 (D. Kan. 1989)…………………12, 21

*Stewart v. Abraham,* 275 F.3d 220 (3rd Cir. 2001)………………………………………13

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931)…………………20

*Thomas v. Christopher,* 169 F.R.D. 224 (D.D.C. 1996)………………………………………15

*Trotter v. Perdue Farms,* 168 F. Supp. 2d 277 (D. Del. 2001)………………………………...13

*Wagner v. Taylor,* 836 F.2d 578 (D.C. Cir. 1987)……………………………………………15

*Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527 (W.D. Pa. 1994)………………………………26

*Weeks v. Bareco Oil Co.,* 125 F.2d 84 (7th Cir. 1941)……………………………………...23

Mo. Rev. Stat. § 290.500 *et seq*………………………………………………………………14

# I.   FACTUAL BACKGROUND

## A.   Parties

Plaintiffs Tina Robertson, Ronal Reynolds, Fran Porter, and Kathy McCready are former hourly employees of LTS Management Services, LLC (hereinafter "LTS") located in Kansas City, Missouri. Plaintiffs were employed by LTS as collectors or "Collection Specialists" whose work responsibilities generally consisted of debt collection-related duties that were non-exempt from the minimum wage and overtime provisions of the FLSA. (*First Amended Complaint*, ¶¶ 2 - 5)

Defendant LTS, is a Missouri limited liability company, with its headquarters at 110 West 9th Street, Suite 100, Kansas City, Missouri 64105. LTS does business in Missouri and nationwide. Numerous other businesses owned in whole or in part by defendant Del Kimball (hereinafter "Kimball") are registered at the same address as LTS.

## B.   Plaintiffs' Allegations

Because Plaintiffs' factual allegations must be accepted as true for purposes of a decision on class certification, the following facts have been established:

1.   Plaintiff and other Collection Specialists routinely performed work for which they are not paid. Plaintiff and other Collection Specialists recorded their time by using a "time badge" which they supposedly were to swipe upon arrival and departure. The time-keeping system on numerous instances was broken for significant periods of time. Plaintiffs and other Collection Specialists usually were able to access the time-keeping program to check or monitor their time worked. (*First Amended Complaint*, ¶¶18-19)

2.   Work was performed before timing in and after timing out and therefore went unpaid. Plaintiffs and other Collection Specialists regularly were required to take phone calls

8

and perform other work-related duties before timing in. Plaintiffs and other Collection Specialists similarly were required to perform work-related tasks after they had timed out for unpaid meal periods or breaks and after the end of their scheduled work days. (*First Amended Complaint*, ¶20).

3.     Plaintiffs and other Collection Specialists were told by Defendants to work "off the work," i.e., to work scheduled and unscheduled hours without compensation at their regular rate or an overtime rate. (*First Amended Complaint*, ¶21).

4.     When Plaintiff and other Collection Specialists recorded time-worked over forty hours in a workweek, Defendants would artificially limit recorded time to forty hours per week. Specifically, Defendants had an unwritten policy and practice of physically altering Plaintiff's and other Collection Specialists' time records by reducing the number of legitimately recorded hours-worked to under or slightly above forty hours. (*First Amended Complaint*, ¶22).

5.     Plaintiff and other Collection Specialists earned an hourly rate and were paid performance-based "bonuses." For the most part, the bonuses were based upon the amount of debt individually collected in a pay period. The bonuses were usually paid at the end of the pay period in which they were earned. The bonuses were not factored into the Plaintiffs' weekly regular rate. (*First Amended Complaint*, ¶23).

C.     **LTS Corporate Policy and Practice**

Defendants demanded their collectors work whatever hours necessary to "hit the numbers"; however, Defendants' policy and practice was to require collectors to time out after their regular, published scheduled time at work had ended. Additionally, Defendants would require collectors to clock out during regularly scheduled lunch and other breaks, without regard for whether they continued to work through the breaks.

9

### D.     LTS Has a Common Practice of Unrecorded Work Without Pay

Each of the Plaintiffs will testify that Defendants' practices of requiring unrecorded work without pay, as well as failing to pay Plaintiffs and other similarly situated employees for all overtime hours worked. *See* (Doc. 45, Ex. B-F); Ex. B, *Depo. Kathy McCready*, p.122, ll.18-25, p.123, ll.1-19, p.124, ll.4-10, 20-25, p.125, l.1-3, p.126, ll.10-15, p.287, ll.5-9; *Depo. Fran Porter*, p.177, ll.5-13, p.196, ll.17-25, p.197, ll.1-4, p.198, ll.2-15, 24-5, p.199, ll.1-6, p.214, ll.14-25, p.215, ll.1-21; *Depo. Tina Robertson*, p.123, ll.4-25, p.124, ll.1-21, p.139, ll.1-3; *Depo. Ronal Reynolds*, p.314, ll.16-25, p.315, ll.1-16.

Defendants' practice of altering records or otherwise failing to accurately record hours worked and failing to pay employees for all hours worked, including overtime compensation. The number and identity of other plaintiffs yet to opt-in and consent to be party-plaintiffs may be determined from the records of Defendants (roughly estimated at 125 persons from incomplete discovery thus far), and potential party-plaintiffs may easily and quickly be notified of the pendency of this action.

## II.     STANDARD FOR CLASS CERTIFICATION

To obtain class certification, Plaintiffs must satisfy the requirements of Fed. R. Civ. P. 23. Subsection (a) of Rule 23 contains four requirements:

(1)     the class is so numerous that joinder of all members is impracticable [numerosity],

(2)     there are questions of law or fact common to the class [commonality],

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and

(4)     the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].

In addition, Plaintiffs satisfy subsection (b) of Rule 23, which requires that common questions of law or fact predominate over individual questions and that the class action is

superior to other methods of adjudication. These requirements are referred to as the predominance and superiority requirements.

The decision to certify a class lies in the sound discretion of the trial court. *See Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983). The Court should resolve any doubts in favor of class certification. *See Arch v. American Tobacco Co.*, 175 F.R.D. 469, 476 (E.D. Pa. 1997); *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) ("if there is an error to be made, let it be in favor of and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require"), *cert. denied*, 394 U.S. 928 (1969).

The Court must accept the Plaintiffs' factual allegations as true. *See Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n.15 (2d Cir. 1978); *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). There is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

## III. ARGUMENT

One of the "primary functions" of a class action is to provide "a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 566 (2d Cir. 1968), *vacated on other grounds*, 417 U.S. 156 (1974). Class actions are designed to provide a convenient avenue for a few persons to adjudicate the interests of many and at the same time protect the interests of persons not before the court. *See Sheets v. Thomann*, 336 S.W.2d 701, 709 (Mo. Ct. App. 1960).

11

The need for class certification here is consistent with this function because the claims of each class member are too small to justify separate legal action, but significant when taken as a group. Class certification is the most efficient means of adjudicating these claims, both for the Court and for the Class as a whole, because no individual action can economically prove that Defendants suffered and permitted their collection specialists to work off the clock without pay.

## A.      Class Definition

A class definition need only meet a minimum standard of definiteness such that it is administratively feasible for the Court to determine whether a particular individual is a member. *See Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986). A class may be certified even if the initial definition includes members who have not been injured. *See Elliott v. IT Corp.*, 150 F.R.D. 569, 575 (N.D. Ill. 1992). Plaintiffs here seek to certify a class defined as:

> All current and former LTS hourly employees of the Kansas City, Missouri location whose job duties involved debt collection activities of contacting debtors regarding alleged delinquent accounts, attempting to secure payment from such debtors, and who have worked for LTS at any time during the last five years.

*Plaintiffs' First Amended Complaint*, ¶20.

Here, the class definition goes well beyond the minimum standard of definiteness. The Class members can be readily determined by Defendants' own employment records. Further, the Class is limited to current and former hourly employees of Defendants within a specific geographic location – Kansas City, Missouri, and within a specific time period.

Similar class definitions have been approved in other wage and hour cases. *See, e.g., Rainbow Group Ltd. v. Johnson,* 990 S.W.2d 351 (Tex. App. 1999) ("all hairstylists employed by Rainbow Group since February 20, 1988"); *Smith v. MCI Tele. Corp.,* 124 F.R.D. 665 (D. Kan. 1989) ("all persons employed by MCI Telecommunications Corporation in its Overland

12

Park, Kansas office to sell commercial long-distance communications services and products from the adoption of MCI Telecommunications Corporation's 'Commercial Sales Force Compensation Plan' from May 1, 1984 through December 31, 1986 ...."); *Trotter v. Perdue Farms,* 168 F. Supp. 2d 277 (D. Del. 2001) ("all persons who at any time from December 16, 1993, to the present have worked or continue to work as nonexempt hourly production employees of Perdue Farms, Inc. in any one or more of the chicken processing facilities operated by Perdue, and who were or are participating in the 'Perdue Supplemental Retirement Plan'").

In any event, shortcomings in a class definition are curable and not a basis to deny certification. The Court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir. 1993). If a proposed class definition is not proper, courts should simply redefine or modify the class definition. *See In re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. 609, 613 (D. Kan. 1995).

### B.       The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.       Numerosity

The numerosity requirement requires an inquiry into whether the class is so numerous that joinder of all members is impracticable. *See Belles v. Schweiker,* 720 F.2d 509, 515 (8th Cir. 1983). Plaintiffs are not required to prove the exact size of the proposed class, only that the number is exceedingly large. *See Rex v. Owens,* 585 F.2d 432, 436 (10th Cir. 1978).

The employee records produced thus far, although incomplete, indicate that the Class consists of around 125 or more employees. As a general rule, courts will certify classes comprising 40 or more members. *See Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001) (finding numerosity requirement met because class exceeded 40 potential members); *Mullen v.*

13

*Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999) (confirming class of 40 would establish numerosity); *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001) (same). Accordingly, the putative class of 125 collection specialists here easily satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires only a preliminary inquiry. *See Esler v. Northrop Corp.,* 86 F.R.D. 20, 34 (W.D. Mo. 1979). There is no quantitative or qualitative requirement. *Id.* The rule only requires one or more common questions of fact or law, it does not require that all questions of law and fact be common. *Id.* The Class here satisfies this preliminary inquiry. In the present case, the common issues include:

#### a. Are Defendants Required Under Missouri Law to Pay Their Employees for Overtime and Off-The-Clock Work?

Plaintiffs allege that Defendants violated Missouri law by failing to pay their collection specialists for OT and OTC work. Specifically, Plaintiffs have alleged violations of Missouri's Wage and Hour law and common law breach of contract, unjust enrichment, and quantum meruit. Missouri's Wage and Hour Law requires employers to pay employees for all overtime work performed. *See* Mo. Rev. Stat. § 290.500 *et seq.* In addition to this statutory protection, under Missouri common law, an employer's promise, whether express or implied, to pay the employee for the worked performed by the employee is a contractually enforceable obligation. *See Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 26 (Mo. Ct. App. W.D. 2008). Further, in *Hale v. Wal-Mart Stores, Inc.,* 231 S.W.3d 215 (Mo. Ct. App. W.D. 2007), the court approved certification of a class alleging a failure to pay for OTC work based on Missouri common law breach of implied contract, unjust enrichment, and quantum meruit.

14

Unlike implied-in-fact contracts that arise from facts and circumstances showing mutual intent to contract, contracts implied-in-law, or "quasi-contracts," exist regardless of assent. *See Rackers & Baclesse, Inc. v. Kintsler*, 497 S.W.2d 549, 554 (Mo. Ct. App. 1973). Plaintiffs need not prove the formation of individual contracts for an implied-in-law contractual duty to exist. *Id.* Under Missouri law, "a contract implied in law is imposed, or created, without regard to the promise of the party to be bound." *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo. Ct. App. W.D. 1984).

Whether Defendants had a duty under Missouri law to compensate their Collection Specialists under Missouri's Wage and Hour law and common law breach of contract, unjust enrichment, and quantum meruit theories is a common question of law share by Plaintiffs and Class members – without regard to the merits of Plaintiffs' claims.

### b. Did Defendants Fail To Pay Plaintiffs and Class Members for Overtime and Off-The-Clock Work?

Plaintiffs ask the Court to resolve a related common question of fact—whether Defendants failed to pay Plaintiffs and Class members for OT and OTC work. The commonality requirement is satisfied by proof that Defendants failed to compensate members of the Class for all hours worked and that this "was a 'standard operating procedure-the regular rather than the unusual practice.'" *Thomas v. Christopher*, 169 F.R.D. 224,237 (D.D.C. 1996), *rev'd in part on other grounds*, 139 F.3d 227 (3d Cir. 1998) (quoting *Wagner v. Taylor*, 836 F.2d 578, 592 (D.C. Cir. 1987)). "It is not necessary that each class member have suffered from the policy in precisely the same manner, only that the alleged [wage abuses] stem from that same general policy." *Thomas*, 169 F.R.D. at 237; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995), *cert. denied*, 417 U.S. 1156 (1996) (where all members of the class have been affected by the same common course of conduct, commonality and typicality are satisfied despite the fact

15

that some class members have different individual issues). "When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Krieger v. Gast,* 197 F.R.D. 310, 319 (W.D. Mich. 2000).

The record contains substantial evidence that it was Defendants' standard operating procedure to not pay for OT and OTC work. *See* (Doc. 45, Ex. B-F); Ex. B, *Depo. Kathy McCready*, p.122, ll.18-25, p.123, ll.1-19, p.124, ll.4-10, 20-25, p.125, l.1-3, p.126, ll.10-15, p.287, ll.5-9; *Depo. Fran Porter*, p.177, ll.5-13, p.196, ll.17-25, p.197, ll.1-4, p.198, ll.2-15, 24-5, p.199, ll.1-6, p.214, ll.14-25, p.215, ll.1-21; *Depo. Tina Robertson*, p.123, ll.4-25, p.124, ll.1-21, p.139, ll.1-3; *Depo. Ronal Reynolds*, p.314, ll.16-25, p.315, ll.1-16. Each named plaintiff testified that LTS had a policy of making them clock out when they were required to work over 40 hours. Additionally, the record evidence demonstrates that in the times that employees would record hours worked over 40, management (usually Brad Weathers) would manually cut the overtime from the time records. Because Defendants' failure to pay for OT and OTC work is a common course of conduct, the required commonality exists here. *See Krieger,* 197 F.R.D. at 319.

### 3. Typicality

Rule 23 requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A plaintiff's claim is typical if it arises from the same practice or course of conduct that gives rise to the claims of other class members, and his claims are based on the same legal theory. *See DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995); *Linquist v. Bowen,* 633 F. Supp. 846, 859 (W.D. Mo. 1986), *aff'd,* 813 F.3d 884 (8th Cir. 1987). "The burden of demonstrating typicality is fairly easily met so long as other class

16

members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174; *see also Alpern v. UtiliCorp United, Inc.* 84 F.3d 1525, 1540 (8th Cir. 1996). As with commonality, the claims or defenses need not be identical. If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims will not normally preclude class certification. *See Carpe v. Aquila*, Inc., 224 F.R.D. 454, 457-58 (W.D. Mo. 2004) (quoting *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)); *see also Owner-Operator Indep. Drivers Ass'n v. New Prime*, 213 F.R.D. 537, 543 (W.D. Mo. 2002); *Lang v. Kan. City Power & Light Co.*, 199 F.R.D. 640, 647 (W.D. Mo. 2001); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 223 (Mo. Ct. App. W.D. 2007).

Plaintiffs' claims in this case are typical of the claims of the Class. The Class members have the "same or similar grievance" as the Plaintiffs arising from Defendants' course of conduct of not falsifying time records and not compensating Class members for OTC and overtime work. Defendants' policy of falsifying time records and not compensating Class members for OTC and OT work is a common course of conduct, even though the uncompensated work performed by Defendants' employees may differ slightly. The legal theories for these grievances are the same for the named Plaintiffs and the Class in that they are based on the same contractual, statutory, or common law duty to pay its employees for all time worked. Whatever duty Defendants owed to the Plaintiffs, it also owed to the hourly employees who constitute the Class.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement asks whether (1) the class representatives have common interests with the members of the class and (2) whether counsel will vigorously prosecute the action on behalf of the class. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63

(8th Cir. 1982).

Only a fundamental conflict going to the heart of the litigation will prevent a plaintiff from meeting the first requirement. *See In re South Cen. States Bakery Products Antitrust Litig.,* 86 F.R.D. 407, 418 (M.D. La. 1980). No such conflict exists here. The interests of the Plaintiffs are directly aligned with that of other Class members. All Class members have the same interest in recovering the damages from Defendants. There is a complete unity of legal and remedial theory between the Plaintiffs' claims and those of the Class. Possible differences in the amount of damages are not a barrier to the satisfaction of this requirement. *See Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 45 (D.C. Va. 1981). Plaintiffs have no conflict with the Class and thus are adequate representatives.

Counsel for Plaintiffs already has demonstrated that they will vigorously prosecute this action and have more than adequate resources and experience to protect the interests of the Class. "In most instances, adequacy is presumed in the absence of contrary evidence by the party opposing class certification. Doubts about adequate representation should be resolved in favor of upholding the class ...." *See Lozada v. Dale Baker Oldsmobile, Inc.,* 197 F.R.D. 321, 330 (W.D. Mich. 2000). Plaintiffs do not expect such contrary evidence, and thus adequacy should be presumed.

### C.  Plaintiffs Satisfy the Predominance and Superiority Requirements of Rule 23(b)(3)

In addition to the four requirements of subsection (a), Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs satisfy both the predominance and superiority requirements.

18

## 1. Predominance

The first necessary determination is whether common questions of fact or law predominate. *See Esler,* 86 F.R.D. at 38. "The common questions need not be determinative, but the efficiency and economy of common adjudication must outweigh the difficulties and complexity of individual treatment of class member claims." *Id.* Predominance occurs unless individual issues clearly overwhelm common questions making the class action valueless. *See In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

Resolving the common issues on behalf of the Class presents significant efficiency and economies to the parties and to the Court. Plaintiffs will show that Defendants have received the benefit of labor from its hourly workforce without paying for that labor, and that it would be inequitable to permit Defendants to retain that benefit. Plaintiffs will also show that Defendants breached its implied-in-law contractual obligation to the Class. Plaintiffs' evidence will likely involve numerous witnesses. Resolving this issue on a class-wide basis presents efficiencies to the parties and the Court because each individual plaintiff would have to submit this same proof of the corporate policy, practice and pattern of Defendants' conduct to prove each case.

The core common issue in this case, under any of Plaintiffs' theories, is whether Defendants have paid for the labor they received from their hourly employees. Once that issue has been resolved in favor of the Class members, a standard claims administration process such as those typically used in these types of class actions can be used to distribute individual damages to the Class members. Once a jury determines the total amount of damages for which Defendants are liable, a jury is not necessary to decide how damages should be divided among the Class. *See In re Simon II Litigation,* 211 F.R.D. 86, 146 (E.D. N.Y. 2002) (plaintiffs use of aggregate proof does not violate defendants' constitutional rights). This process will be tied to

the notice requirement of Rule 23(c)(2), and the opportunity to opt-out of the Class.

### a. Proving Aggregate Class-Wide Damages Is Appropriate

Defendants will no doubt argue that the differing damages of Class members presents individual issues that overcome the predominance of the common issues. This argument was rejected by the United States District Court for the Western District in *Esler,* where the court held that even though damages needed to be determined individually, the "individual damage questions do not preclude a [23](b)(3) class action, when liability issues are common to the class." 86 F.R.D. at 39; *see also In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. at 523 ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where [the defendants' act] has caused widespread injury to the Class."). Further, questions of damages need not be resolved at the class certification stage. *See In re Potash Antitrust Litig.,* 159 F.R.D. 682, 692 (D. Minn. 1995).

Plaintiffs do not need to prove the exact amount of damage to each individual class member. *See Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563 (1931). Where the defendant's wrongdoing is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damage may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damage as a matter of just and reasonable inference, although the result be an approximation. The wrongdoer is not entitled to complain that they cannot be measured with exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. *Id.* at 563.

20

### b. Similar Wage and Hour Cases Have Met the Predominance Requirement

Numerous courts addressing similar "wage and hour" cases have found that common issues predominate over individual issues:

- *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665 (D. Kan. 1989) (fact that proposed class members worked under different compensation plans did not indicate that damages question would predominate over individual questions where damages suffered by each class member could be determined by simply compelling an accounting from the employer)

- *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 160 (S.D.N.Y. 2008) (Where there is evidence that the duties of the job are largely defined by corporate procedures and policies and policies, courts routinely certify classes of employees despite arguments about individualized differences in job responsibilities)

- *Rainbow Group Ltd. v. Johnson,* 990 S.W.2d 351 (Tex. App. 1999, pet. dism'd) (hairstylists had systematically not been allowed to clock in at the beginning of their shifts or after returning from lunch; common issues predominated where the stores regulated the employees' conduct with one set of employment policies contained in one common employee manual)

- *Ramirez v. Labor Ready, Inc., et al.,* 2002 WL 1997037 (Cal. Superior, July 12, 2002) ("A class action can, however, be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages....")

- *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091 (N.D. Ill. 2000) (class certified of employees seeking pay for all hours worked and overtime)

- *Guzman v. VLM, Inc.,* 2008 WL 597186, *8 (E.D.N.Y. Mar. 2, 2008) ("Predominance is satisfied . . . where the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees")

In the present case, like in numerous other similar "wage and hour" class action cases, Plaintiffs have met the "predominance" requirement. Plaintiffs have alleged and will prove that Defendants had a "standard operating procedure" that was applied uniformly to all of Defendants' collection specialists. *See* (Doc. 45, Ex. B-F); Ex. B, *McCready Depo.,* p.122,

21

ll.18-25, p.123, ll.1-19, p.124, ll.4-10, 20-25, p.125, l.1-3, p.126, ll.10-15, p.287, ll.5-9; *Porter Depo.,* p.177, ll.5-13, p.196, ll.17-25, p.197, ll.1-4, p.198, ll.2-15, 24-5, p.199, ll.1-6, p.214, ll.14-25, p.215, ll.1-21; *Robertson Depo.,* p.123, ll.4-25, p.124, ll.1-21, p.139, ll.1-3; *Reynolds Depo.,* p.314, ll.16-25, p.315, ll.1-16. The "liability" issues of duty, breach and causation, or whether Defendants have been unjustly enriched, are common to all Class members. Defendants' legal duty to pay one hourly employee for all time worked applies equally to every hourly employee.

2.    **Superiority**

The second determination under Rule 23 is whether a class action is superior to other available methods of adjudication. Rule 23 lists three factors "pertinent" to a finding of superiority: "(A) the interest of members of the class in prosecuting or defending separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the appropriate place for maintaining, and the procedural measures which may be needed in conducting, a class action."

The United States Supreme Court has emphasized that the primary purpose of the class action mechanism is to provide a vehicle for similarly situated persons who individually have small claims to attain redress. *See Amchem Products v. Windsor,* 521 U.S. 591, 617 (1997). In *Amchem,* the Court held that the policy at the very core of the class action mechanism is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1977)).

Class actions, such as this one, that aggregate small claims that could not otherwise be

brought, are exactly the type of claims that satisfy the superiority requirement:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied ....

*Lozada,* 197 F.R.D. at 332.[1]

Numerous courts have found Rule 23 state wage and hour class actions to be a superior method of adjudicating the controversy to the FLSA's collective action method[2] Specifically, the Rule 23 class is considered superior because class members might fear reprisal and be disinclined to pursue individual claims. *See Guzman v. VLM, Inc.,* 2008 WL 597186, *8 (Mar. 2, 2008); *Ramirez v. RDO-BOS Farms, LLC,* 2007 WL 273604 (D. Or. Jan. 23, 2007); *McLaughlin v. Liberty Mutual Ins. Co.,* 224 F.R.D. 304, 309 (D. Mass. 2004). In addition, requiring employees to pursue their state law remedies in state court would be waste judicial resources and

---

[1] *See also Nissan Motor Co. v. Fry,* 27 S.W.3d 573, 586-87 (Tex. App.- Corpus Christi *2000, pet. denied*) (class action superior to individual lawsuits because "denying class certification would leave many class members without any meaningful remedy, given the impracticability of each member suing for his individual small monetary claim"); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device."); *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149, 171 (W.D. Mich. 1977) ("The class action device confers 'a particularly valuable privilege where the individual claims would be too small to justify separate litigation.'"); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 626 (E.D. Pa. 1994) ("Given the relatively small amount recoverable by each potential litigant, it is unlikely that absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action."); *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 90 (7th Cir. 1941) ("To permit the defendants to contest liability with each claimant in a single, separate suit would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.").

[2] *See Guzman v. VLM, Inc.,* 2008 WL 597186 (Mar. 2, 2008); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008); *Musch v. Domtar Industries, Inc.,* 252 F.R.D. 456 (W.D. Wis. 2008); *Duchene v. Michael L. Cetta, Inc.,* 244 F.R.D. 202 (S.D.N.Y. June 18, 2007); *Ramirez v. RDO-BOS Farms, LLC,* 2007 WL 273604 (D. Or. Jan. 23, 2007); *McLaughlin v. Liberty Mutual Ins. Co.,* 224 F.R.D. 304 (D. Mass. 2004); *Scott v. Aetna Services, Inc.,* 210 F.R.D. 261 (D. Conn. 2002); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000).

increase litigation costs. *See Musch v. Domtar Industries, Inc.*, 252 F.R.D. 456 (W.D. Wis. 2008); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000).

The Class members in this case will never have their claims heard if there is no class action. The Class in this case is large, but the individual damages are relatively small. The expense and burden of individual litigation effectively precludes these Class members from addressing their complaints. Without class certification, the majority of Defendants hourly employees will effectively be barred from obtaining a decision on the merits, leaving no remedy for them despite clear evidence that their rights as employees have been violated. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978) (labeling denial of class certification in such cases a "death knell" because it effectively ends the litigation in that the individual claims are too small and costly to pursue); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 164 (3d Cir. 2001); *In re D.M.,* 771 A.2d 360 (D.C. 2001); *Millett v. Atlantic Richfield Co.,* 760 A.2d 250 (Me. 2000); *Blair v. Equifax Check Services, Inc., 181* F.3d 832, 833-36 (7th Cir. 1999). Moreover, a series of small individual breach of contract or unjust enrichment cases without the possibility of punitive damages will not have the necessary deterrent effect to force Defendants to change their behavior.

Resolving the common issues on behalf of the Class is the most efficient way to proceed for the parties and the Court. A class action will show that Defendants have an obligation to pay its hourly employees for all time worked and to provide those employees with rest and meal breaks. Resolving this issue will affect every hourly employee of Defendants because they deny that obligation. Plaintiffs will present testimony of numerous employees of Defendants. Each individual plaintiff should not be forced to undergo a multi-day trial to support an individual case

24

against Defendants seeking a relatively small recovery when this issue can be tried once on behalf of a Class.

The remaining factors listed in Rule 23 also favor certification. At the time this action was commenced, no individual action had been brought, no doubt because no attorney would agree to take such a case. Further, it is extremely desirable to concentrate the litigation of these claims. Class certification will promote efficiency because the claims of the Class members will be handled by a single group of lawyers instead of a multitude of diversely located and divergently motivated and informed lawyers. Discovery will be centralized. The claims of the Class members will be dealt with in a centralized location. The claims of the Class members will be dealt with in a single trial proceeding. And such claims can be handled in a single appeal, if one is taken. "[C]oncentration of the litigation of these claims in a single suit is desirable because liability is established in a single proceeding, saving attorney time and expenses for both plaintiffs and defendant." *Lozada,* 197 F.R.D. at 333. "In addition, ... pursuit of relief in a class action better assures that the class of injured persons will achieve complete relief." *Id.* "Thus, it is virtually certain that a class action will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Esplin,* 402 F.2d at 101 (citation omitted).

Certifying a class will also equalize the stakes between the Plaintiffs and the Defendants and thereby promote greater parity in the amount spent to litigate on either side. This will naturally create a situation far more conducive to a fair adjudication of the controversy. It will be too expensive for individual employees of Defendants to hire their own attorneys and experts to prove that Defendants are under-staffing its stores. In those circumstances, Defendants could use its corporate muscle to prey on smaller parties.

Finally, this case does not present any significant manageability problems. "Manageability should be considered only in relation to alternative means of adjudication ...." *Brown,* 92 F.R.D. at 49. "[O]nly where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class, can difficulty in management support denial of class certification ...." *Id.* (quoting 3B Moore's Federal Practice, p. 23.45 (4.-4)).

Manageability problems do not exist simply because the case is complex or time consuming. The rules governing class certification do not support a denial of a class action to avoid delay on the court's docket or because the court does not wish to become involved in complex or protracted litigation. *See In re Antibiotic Antitrust Actions,* 333 F. Supp. 278, 289 (S.D.N.Y. 1971) ("the court cannot simply close its doors to these litigants because their actions present novel or difficult questions"). In fact, many courts have recognized that complexity is often a characteristic of class action litigation and that potential management difficulties are not grounds for class denial when justice can be done only through the class action device. *See Smith,* 124 F.R.D. at 680 (common issues predominated and class certification would not present problems related to manageability because "to the extent that individual issues, such as the amount of each Class Member's damages, exist, the court may address these issues following trial or in separate proceedings").

Nor do individual damage issues present a manageability problem. *Brown v. Pro Football, Inc.,* 146 F.R.D. 1, 5 (D.D.C. 1992) (finding no manageability problem because the calculation of individual damages may be made by simple common formula); *Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527, 531 (W.D. Pa. 1994) (determination of amount of recovery for each employee class member will be based on a manageable mathematical

formula); *In re Visa Check/Mastermoney Antitrust Litigation,* 280 F.3d 124 (2d Cir. 2001), *cert. denied,* 536 U.S. 917 (2002) (class would be manageable even though some individualized damage calculations might have to be made).

The manageability of this case has been demonstrated by the numerous other wage and hour class action cases discussed above. Simply put, this is precisely the kind of case that class actions were designed for—small damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant. Without allowing these Plaintiffs to collectively bring a suit, Defendants would be free to continue its predatory and unfair labor practices in the State of Missouri. It is neither logical nor economical to force hourly employees to pursue these claims on an individual basis. Individually, these cases are "negative value" cases and will in all likelihood not be pursued by individual class members if the class is not certified.

Because these individual cases are not a viable option, a class action is the superior method to resolve the claims asserted here.

## CONCLUSION

Plaintiffs' claims satisfy all the requirements of Rule 23. The elements of numerosity, typicality, commonality, adequacy of representation, predominance and superiority are all met. Plaintiffs respectfully request that this Court certify the Class, approve notification of all putative class members, and appoint the Named Plaintiffs and Class counsel to represent the Class. Plaintiffs have attached, as Exhibit A, a proposed notice to the Class members and an Opt-Out Form.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC

By: /s/ Amy P. Maloney
      Amy P. Maloney, Mo. 48936
      Kirk Holman, Mo. 50715
      4600 Madison Avenue, Suite 810
      Kansas City, Missouri 64112
      Phone: 816.283.8738
      Fax: 816.283.8739

ATTORNEYS FOR PLAINTIFFS